UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


PURE GRACE, INC.,

                          Plaintiff,                No. CV 04-01763-MO

            v.                            OPINION & ORDER

MARGARET FURLONG aka MARGARET
ALEXANDER, an individual and CARRIAGE
HOUSE STUDIO, INC., dba MARGARET
FURLONG DESIGNS, a Corporation

                          Defendants.


**MOSMAN, J.,_____**

      Before the court is plaintiff Pure Grace's Motion for Attorneys' Fees and Costs.  Pure

Grace moves for an award of attorneys' fees in the amount of $67,802.65 pursuant to Fed. R.

Civ. P. 54(d)(2) and LR 54.3.  It also moves for an award of costs in the amount of $4,471.25

under Fed. R. Civ. P. 54(d)(1) and LR 54.1.  For the reasons that follow, Pure Grace's Motion for

Attorneys' Fees and Costs (#71) is DENIED IN PART and GRANTED IN PART.  The court

DENIES Pure Grace's motion as to fees, but GRANTS IN PART Pure Grace's motion as to

costs.  The court will schedule a hearing as to the narrow issue of intent regarding fees for Pure

Grace's Fifth Claim for Relief.

PAGE 1 - OPINION AND ORDER

## I.  FACTUAL AND PROCEDURAL HISTORY

On November 30, 2004, Pure Grace filed suit against defendants Margaret Furlong and

Carriage House Studio ("Ms. Furlong") in state court alleging five claims for relief: (1)

intentional interference with rights in a contract ("IIRC"), (2) slander and defamation, (3)

violation of Oregon's Unfair Trade Practices Act ("OUTPA") under Or. Rev. Stat. §§ 646.605-

646.652, (4) violation of Oregon's Antitrust Act ("OAA") under Or. Rev. Stat. §§ 646.705-

646.805, and (5) injunctive relief on grounds that Ms. Furlong's conduct was causing Pure Grace

irreparable harm and that no adequate remedy at law existed.

Injunctive relief is available under both OUTPA and OAA.  Pure Grace specifically

indicated in its Third and Fourth Claims for Relief that it sought injunctive relief under both of

these Oregon statutory theories.  Compl. at ¶¶ 39, 50.  But, Pure Grace's Fifth Claim for Relief

also specifically and separately requested injunctive relief.  Compl. at ¶ 53. Thus, Pure Grace

could have obtained injunctive relief, even if its Third and Fourth Claims were dismissed.

On December 1, 2004, the day after Pure Grace filed suit, a Marion County Circuit Court

judge signed a temporary restraining order ("TRO") granting Pure Grace the injunctive relief it

sought.  Specifically, the TRO restrained Ms. Furlong from:

> Making any allegations of infringement, or any threats or claims against third
> parties related to Plaintiff's products and business;
> Contacting third parties, including distributors, shop-owners, consumers, and
> others in an effort to impact the sales or business of the Plaintiff;
> Accusing Plaintiff or any of Plaintiff's employees or agents of copyright
> infringement, trademark infringement or any other infringement or crime without
> legal and factual basis until and unless such facts have been proven in a court of
> law; [and]
> Bringing any claims or making allegations or threats of claims against third parties
> related to the Plaintiff's products or business.

Pl.'s Mem. Supp. Att'y Fees and Costs ("Pl.'s Mem."), Ex. 3.  The language used in the TRO

was almost identical to the language Pure Grace used in its prayer for relief for its Fifth Claim for injunctive relief. *See* Compl. at 12-13. Ms. Furlong filed a notice of removal on December 10, 2004, and on January 7, 2005, filed an answer alleging counterclaims against Pure Grace for copyright infringement under 17 U.S.C. § 501 *et. seq* and violations of the Lanham Act under 15 U.S.C. § 1117.

There were extensive delays in this case. Ms. Furlong changed counsel three times and was slow to comply with discovery. Pl.'s Mem. at 4. Ms. Furlong also apparently failed to appear in separately noticed and scheduled depositions on September 29, 2005, October 19, 2005, and February 21, 2006, *id.*, as well as on several other occasions in November 2005. Pl.'s April 14, 2006 Disc. Mot. at 4. When she finally appeared for a deposition on December 15, 2005, she left early and did not reschedule in violation of the parties' agreement. *Id.* Ms. Furlong was ultimately sanctioned for failure to complete discovery as ordered. Pl.'s Mem. at 4. The parties finally reached a settlement agreement on June 30, 2006, before discovery and depositions could be completed. *Id.* at 4-5. The settlement agreement provided that the TRO would be translated into a permanent injunction, that the parties would dismiss their remaining claims without prejudice, and that "Pure Grace's costs and fees will be determined by motion to Judge Mosman." Settlement Agr. at 2. On July 28, 2006, Ms. Furlong filed a motion requesting that "all remaining claims and counterclaims be dismissed without prejudice." Def.'s Mot. to Dismiss Remaining Claims and Counterclaims ("Def.'s Mot. to Dismiss") at 2. The motion did not specify which claims would be dismissed and which would remain. Then, both parties filed for a stipulated judgment on August 23, 2006.

PAGE 3 - OPINION AND ORDER

The court entered the stipulated judgment granting Pure Grace's request for a permanent injunction pursuant to the terms of the Settlement Agreement.  On August 28, 2006, the court granted Ms. Furlong's motion, using the language in Ms. Furlong's proposed order, which stated simply, "The Court having considered the Settlement Agreements of the Parties, the Stipulated Motion for Permanent Injunction and approving it, HEREBY ORDERS that the remaining claims and counterclaims are hereby dismissed without prejudice."  Def.'s Motion to Dismiss at 2; Order to Dismiss Claims and Counterclaims ("Order to Dismiss") at 1.  Pure Grace now moves for attorneys' fees and costs on statutory, contractual, and equitable grounds.

## II. DISCUSSION

Pure Grace asserts it is entitled to fees and costs as prevailing party on its IIRC, slander and defamation, OUTPA and OAA claims, as well as on Ms. Furlong's copyright and trademark counterclaims.  Ms. Furlong contends Pure Grace could not have been the prevailing party on these six claims because the court dismissed them without prejudice pursuant to the terms of the settlement agreement.  Because attorneys' fees may only be awarded to the prevailing party, the court must first determine which claims remain before deciding which party prevailed on them.

A. Dismissal of Remaining Claims and Counterclaims

Fed. R. Civ. P. 41 governs dismissal of actions.  It also governs dismissal of counterclaims. Fed. R. Civ. P. 41(c).  Rule 41 provides than an action may be voluntarily dismissed by stipulation "by filing a stipulation of dismissal signed by all parties who have appeared in the action."  Fed. R. Civ. P. 41(a).  Unless otherwise stated, "the dismissal is without prejudice."  *Id.*  A dismissal without prejudice under Rule 41(a) leaves the parties as though no

action had been brought. *City of S. Pasadena v. Mineta*, 284 F.3d 1154, 1157-58 (9th Cir. 2002)

(citing *Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th Cir. 1992)).

      Even when a settlement agreement disposes of a federal claim, state contract law governs

the interpretation of the agreement. *Botefur v. City of Eagle Point, OR*, 7 F.3d 152, 156 (9th Cir.

1993). A written contract embodies the complete agreement between the parties. Or. Rev. Stat.

§ 41.740. An unambiguous contract must be enforced according to its terms. *Or. Sch.*

*Employees Ass'n, Chapter 89 v. Ranier Sch. Dist. No. 13*, 808 P.2d 83, 87 (Or. 1991). However,

Oregon's parol evidence rule authorizes the court to consider extrinsic evidence of the

circumstances under which the contract was made to resolve an intrinsic or extrinsic ambiguity.[1]

Or. Rev. Stat. § 41.740 (Parol Evidence Rule); Or. Rev. Stat. § 42.220 (Consideration of

Circumstances); *Abercrombie v. Hayden Corp.*, 883 P.2d 845, 853 (Or. 1994) (holding that if

ambiguity exists, extrinsic evidence is admissible to explain agreement). Under Oregon law, "a

contract is ambiguous if it has no definite significance or if it is capable of more than one

sensible and reasonable interpretation." *Edwards v. Times Mirror Co.*, 795 P.2d 564, 567 (Or.

App. 1990) (quoting *Deerfield Commodities v. Nerco, Inc.*, 696 P.2d 1096 (Or. App. 1985). The

court is limited to the "four corners" of the document in determining whether an ambiguity exists,

*id.*, but the court may consider the text "in the context of the agreement as a whole and in light of

---

      [1]Or. Rev. Stat. § 42.220 states: "In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."

      Or. Rev. Stat § 41.740, which governs parol evidence, provides that a written contract embodies the complete agreement between the parties, but in Oregon "does not exclude other evidence of circumstances under which the agreement was made, or to which it relates, as defined in ORS § 42.220, or to explain an ambiguity, intrinsic or extrinsic. . . ."

PAGE 5 - OPINION AND ORDER

the circumstances underlying the formation of the contract." *Batzer Construction, Inc. v. Boyer*, 129 P.3d 773, 778 (Or. App. 2006). The court may attempt to determine the parties' intent only when an ambiguity exists. *Or. Sch. Employees*, 808 P.2d at 87.

Here, this court granted Ms. Furlong's motion to dismiss "all remaining claims and counterclaims between the parties without prejudice." Order to Dismiss at 1. It is unclear from the order, which was taken from language submitted by the parties, exactly which claims were dismissed. Thus, the court's order does not shed any light on the problem.

The settlement agreement fails to clarify which claims the parties agreed to dismiss, providing only that "[t]he parties agree to mutually dismiss their remaining claims without prejudice, pursuant to the Stipulated Motion to Dismiss Complaint and Counterclaims without Prejudice and Order Dismissing Complaint and Counterclaims without Prejudice . . . ," both of which fail to indicate which claims were dismissed. Settlement Agr. at 2, ¶ 4. Limiting myself to the four corners of the final settlement agreement executed on July 21, 2006, I conclude that the clause dismissing the remaining claim is ambiguous. *Edwards*, 795 P.2d at 567.

"When a written instrument refers in specific terms to another writing as containing part of the agreement, the other writing is itself a part of the contract between the parties" and courts must "construe them together as one contract to discern the parties' intent." *Snow Mountain Pine, Ltd. v. Tecton Laminates Corp.*, 869 P.2d 369, 372 (Or. App. 1994) (internal citations and quotations omitted). Extending my examination to include the TRO and the Judgment for Permanent Injunction as incorporated by paragraph 1 of the settlement agreement, it becomes clear the parties intended to dismiss all claims and counterclaims except for the Fifth Claim for injunctive relief. The language used in the TRO memorializes only the language Pure Grace

PAGE 6 - OPINION AND ORDER

used in its Complaint regarding its prayer for relief on its Fifth Claim.  Furthermore, the settlement agreement does not include any clauses awarding Pure Grace money damages for its common law or statutory claims.  Finally, Pure Grace's assertion that it prevailed on all of its claims is illogical because it would render meaningless the court's order dismissing the remaining claims and counterclaims.

Pure Grace argues it is the prevailing party, despite the fact that the court dismissed the remaining claims without prejudice, because the language of the TRO incorporated into the permanent injunction effectively bars Ms. Furlong from ever filing suit again.  Pl.'s Reply at 3-4. I disagree.  The plain language of the permanent injunction does two things.  First, it prevents Ms. Furlong from interfering with or threatening legal action against third parties regarding Pure Grace or its products.  Second, it prevents Ms. Furlong from accusing Pure Grace or its employees of any kind of infringement without legal and factual basis as determined in a court of law.  Thus, the plain language of the injunction doesn't restrain Ms. Furlong from *ever* filing suit–it merely prevents Ms. Furlong from filing suit without adequate legal basis and from heckling Pure Grace's customers in the meantime.

Moreover, although the Fifth Claim might embody the spirit of some of the other claims, Pure Grace plead it as a separate and distinct claim.  Therefore, even though the Third and Fourth Claims provided for similar relief, the settlement agreement and the documents it incorporated by reference indicate the parties' agreement extended only to the Fifth Claim, and as such, Pure Grace is the prevailing party only as to that claim.  Under this interpretation, Pure Grace's First, Second, Third and Fourth Claims, and Ms. Furlong's counterclaims, were dismissed.  Because the settlement agreement is not ambiguous when considered together with the terms of the

PAGE 7 - OPINION AND ORDER

permanent injunction, the court should not attempt to divine the parties' intent.  And because

Pure Grace's First, Second, Third, and Fourth Claims, and Ms. Furlong's copyright and trademark

claims were dismissed without prejudice, Pure Grace cannot be the prevailing party on those

claims.  Regardless of the practical effect of the injunction, Pure Grace is not entitled to

attorneys' fees or costs on the dismissed claims.  Therefore, the only remaining claim, for

purposes of determining entitlement to attorneys' fees is Pure Grace's Fifth Claim for injunctive

relief.

B.  Attorneys' Fees

The prevailing party is ordinarily not entitled to collect attorneys' fees and costs unless

authorized by statute, rule, or contract.  *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S.

240, 247 (1975).  Here, Pure Grace claims it was the prevailing party on both statutory and

contractual grounds.  It also asserts that the court should exercise its equitable powers to award

Pure Grace fees and costs because Ms. Furlong was uncooperative and prosecuted her

counterclaims in bad faith.

1.  *Statutory Grounds for Attorneys' Fees*

In one form or another, the statutory claims and counterclaims in this case authorize

attorneys' fees to the prevailing party.  But, the Fifth Claim for Injunctive Relief is the only

remaining claim, and it is not based on any statute authorizing attorneys' fees.  As a result, Pure

Grace is not entitled to attorneys' fees under any statutory theory.  While Pure Grace received the

injunctive relief it sought and therefore may be characterized as the prevailing party on that

claim, there is no statutory entitlement to attorneys' fees when a party seeks injunctive relief

from the court pursuant to the court's equitable powers.

PAGE 8 - OPINION AND ORDER

2. *Contractual Grounds for Attorneys' Fees*

Alternatively, Pure Grace argues it is entitled to attorneys' fees based on two independent contractual authorizations for collecting fees. It asserts that both the settlement agreement between the parties and the stipulated final judgment ordered by the court contain binding fee agreements. The language in both documents states: "Pure Grace's costs and fees will be determined by motion to Judge Mosman." In response, Ms. Furlong argues the settlement agreement does not provide an independent contractual basis authorizing the court to award fees. Def.'s Opp'n at 3-4.

This clause could reasonably be interpreted in more than one way. Ms. Furlong suggests this statement simply entitles Pure Grace to move for attorneys' fees and costs, but that the court would ultimately decide whether Pure Grace was entitled to costs and fees, and if so, how much. Def.'s Opp'n at 3. In contrast, Pure Grace characterizes this clause as a fee agreement and argues this means the parties agreed Pure Grace was entitled to fees and costs, and the court would only decide how much. Pl.'s Mem. at 7-8. Because of its ambiguity, it continues to evade interpretation, and therefore, the court can consider the circumstances surrounding the execution of the agreement. Yet, nothing in the record even remotely illuminates this clause. Without internal clarity, or explanatory content, the court must interpret the disputed language according to the intent of the parties. No helpful evidence of such intent has yet been provided. For this reason, the court will hold a hearing on this narrow issue of intent.

3. *Equitable Grounds for Attorneys' Fees*

Pure Grace also asserts that the court should exercise its equitable powers to award Pure Grace attorneys' fees because it alleges Ms. Furlong brought its counterclaims in bad faith to the

PAGE 9 - OPINION AND ORDER

extent that Ms. Furlong was uncooperative with discovery and failed to appear at several noticed depositions.  Pl.'s Reply at 3.  It further claims Ms. Furlong improperly filed its counterclaims as a "mere bargaining tool."  Ms. Furlong responds that it voluntarily ceased the conduct prohibited by the TRO, which it claims illustrates its cooperative spirit in these proceedings.

Federal courts have inherent power to assess attorneys' fees against a losing party who acts "in bad faith, vexatiously, wantonly or for oppressive reasons."  *Alyeska Pipeline Serv. Co.*, 421 U.S. at 258-59. An award of attorneys' fees based on "bad faith" conduct is punitive and "can be imposed only in exceptional cases and for dominating reasons of justice."  *Brown v. Sullivan*, 916 F.2d. 492, 495 (9th Cir. 1990) (internal quotations omitted).  A finding of bad faith is warranted when an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."  *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001) (citing *In re Keegan  Mgmt. Co.*, 78 F.3d 431, 436 (9th Cir. 1996)).

In this case, Ms. Furlong's counterclaims were reasonable under the circumstances given that Pure Grace's founder and owner formerly worked as president of Margaret Furlong Designs, both companies' packaging was similar, and the ceramic products themselves played on the same themes.  These circumstances do not suggest Ms. Furlong filed her counterclaims only to harass Pure Grace.  Nor does the delay and lack of cooperation rise to the level of an "exceptional case" that would justify an award of fees on equitable grounds.

C.  Plaintiff's Costs

Asserting that it is the prevailing party, Pure Grace seeks costs in the amount of $4,471.25.  Specifically, it requests $203.00 for a filing fee, $70.00 for a service fee, $745.60 in copy costs, $452.65 for the cost of rescheduling the December 15, 2005 deposition, and $3000.00

PAGE 10 - OPINION AND ORDER

for an expert witness retainer.  Pl.'s Mem. at Ex. 4.  On May 30, 2006, the court granted Pure

Grace's Second Motion for Discovery and/or Sanctions (#41) and allowed "the costs associated

with filing that motion, and any related costs of the deposition itself and of rescheduling the

deposition . . . . The cost of the deposition itself will be borne by the defendant."  Tr. of May 30,

2006 Status Conference at 7.  Ms. Furlong objects to an award of costs for the copy fees and

expert witness retainer.  Def.'s Opp'n at 10.  Pure Grace provided a bill of costs.  However, it did

not provide supporting receipts or an affidavit indicating how these costs were tallied.

Fed. R. Civ. P. 54(d)(1) awards costs "to the prevailing party unless the court otherwise

directs."  Pure Grace only prevailed on its Fifth Claim for Injunctive Relief.  However, because

the Fifth Claim was a significant claim in that it afforded Pure Grace a substantial portion of the

relief it sought, I find Pure Grace was the prevailing party.  *Hashimoto v. Dalton,* 118 F.3d 671,

677 (9th Cir. 1997).

At the very least, Pure Grace's request for filing and services fees are feasible, despite the

lack of documentation.  In addition, Ms. Furlong does not specifically object to these costs.  But

absent some minimal documentation, I cannot award Pure Grace $745.60 in copy costs.

I award costs of $452.65 for the December 15, 2005 deposition.  The bill of costs shows

Ms. Furlong has already paid for the deposition that the court ordered to be scheduled and that

occurred on June 27, 2006.  I can only assume the $452.65 is the cost associated with

rescheduling the December 15, 2005 deposition in light of Ms. Furlong's leaving early.  In any

event, Ms. Furlong poses no specific objection to this cost.

Finally, Pure Grace is not entitled to $3,000.00 for an "expert witness" retainer.  Absent

explicit statutory or contractual authority for shifting expert witness fees, reimbursement for such

costs is limited by 28 U.S.C. §§ 1821 and 1920, which govern expert witness fees and taxation of costs. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987). "A federal court may tax expert witness fees in excess of the $[4]0 per day limit set out in § 1821(b) only when the witness is court appointed." *Id.* at 442. Furthermore, witness fees are recoverable only for witnesses who were "in attendance" at trial, or who were deposed for the purpose of producing testimony at trial. 28 U.S.C. § 1821(a)(1). Here, Pure Grace's expert was not court appointed, nor does Pure Grace provide any solid evidence that it intended for its unidentified expert to testify at trial. Accordingly, Pure Grace is not entitled to $3000.00 costs for retaining an expert witness in this case.

Thus, Pure Grace is entitled to the following costs, assuming it can provide adequate documentation:

| | |
|---|---|
| Filing Fee | $203.00 |
| Service Fee | $ 70.00 |
| Dec. 15, 2005 Depo. | $452.65 (assuming this is the deposition in question) |
| Total | $725.65 |

IT IS SO ORDERED.

DATED this  4th  day of December, 2006.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

PAGE 12 - OPINION AND ORDER